1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF WASHINGTON

8    NATIONAL ELECTRICAL ANNUITY            No. 1:15-CV-3213-MKD
     PLAN,
9                        Plaintiff,         ORDER DENYING DEFENDANTS'
                                            CROSS-MOTIONS FOR
10   vs.                                    SUMMARY JUDGMENT

11   SHAWNA T. ROYBAL et al
                         Defendants.        **ECF Nos. 46, 49**
12

13          BEFORE THE COURT are Defendant Roybal's Motion for Summary

14   Judgment (ECF No. 49) and Defendant Hill's Motion for Summary Judgment

15   (ECF No. 46).  The Court heard argument on October 11, 2017.  Jeffrey Maxwell

16   appeared by telephone on behalf of Plaintiff National Electrical Annuity Plan

17   (NEAP).  Tyler Farmer appeared on behalf of Ms. Roybal.  Russell Gilbert

18   appeared on behalf of Mr. Hill.  The Court, having reviewed the briefing, the

19   record, and files therein and heard argument, is fully informed.  For the reasons

20   discussed below, the Court denies Ms. Roybal's motion (ECF No. 49) and denies

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

Mr. Hill's motion (ECF No. 46).

## JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1132(e) and 1132(a)(3)(B)(ii).

## PROCEDURAL BACKGROUND

The parties have filed cross-motions for summary judgment. ECF Nos. 46, 49. As part of the briefing of those motions, Ms. Roybal sought partial summary judgment. ECF No. 58 at 2. The Court heard argument on the motions on October 11, 2017. During argument, Defendant Hill conceded that Ms. Roybal is entitled to at least half of the proceeds of Ronnal Hill's NEAP account. Based on this concession, Ms. Roybal filed a subsequent motion for partial summary judgment, reiterating some of the claims raised in her initial motion for summary judgment. ECF No. 76. Mr. Hill filed an objection on procedural grounds but did not dispute Ms. Roybal's factual and legal entitlement to partial summary judgment. ECF No. 81. The Court granted the motion for partial summary judgment in a separate order. ECF No. 83. The Court now addresses the remainder of the issues raised in the parties' cross motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the

initial burden of demonstrating the absence of any genuine issues of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

non-moving party to identify specific facts showing there is a genuine issue of

material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"The mere existence of a scintilla of evidence in support of the plaintiff's position

will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. For purposes of summary judgment, "[i]f a party

fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact as required by Rule 56(c), the court may . . . consider the

fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d).

A fact is "material" if it might affect the outcome of the suit under the

governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is

"genuine" only where the evidence is such that the trier-of-fact could find in favor

of the non-moving party. *Id.* "[A] party opposing a properly supported motion for

summary judgment may not rest upon the mere allegations or denials of his

pleading, but must set forth specific facts showing that there is a genuine issue for

trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l*

*Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party

is only entitled to proceed to trial if it presents sufficient, probative evidence

supporting the claimed factual dispute, rather than resting on mere allegations).

Finally, in ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

## UNDISPUTED FACTS

NEAP is an employee pension benefit plan, governed by the Employee Retirement Income Security Act of 1974 (ERISA). ECF No. 1 at 2-3. NEAP's Plan of Benefits (Plan) contains the governing rules, regulations, policies, and procedures for payment of benefits under NEAP. ECF No. 47 at 5; ECF No. 73 at 8. The Plan affords "full discretionary power and authority to construe and interpret the provisions of this Plan, the terms used herein, and the rules, regulations, and policies related thereto." *Id.* at 25-26.; ECF No. 73 at 27.

Ronnal L. Hill (Participant) participated in the NEAP Plan through his employment. ECF No. 1 at 3. On or about November 14, 2009, Participant submitted a NEAP Normal Benefit Application, in which he selected a fifteen year payout of his NEAP account. *Id.* Included in Participant's Normal Benefit

ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

Application was a Designation of Beneficiary and Spouse Consent Form

(beneficiary form). ECF No. 53 at 7. Participant completed certain fields on the

beneficiary form, including the name, relationship to, and birthday of intended

beneficiary with the information of his daughter Shawna Roybal. ECF No. 52 at

34. Participant did not sign the beneficiary form. *Id.* Instead, Participant's

daughter Ms. Roybal signed the beneficiary form in the section designated for

Participant's signature. *Id.* Participant signed two other pages in the benefits

application. ECF No. 53 at 10-11.

NEAP's trustees approved Participant's application for benefits. ECF No.

1 at 3. Participant died on December 7, 2014, with an outstanding NEAP

account balance of approximately $400,000. *Id.* On January 22, 2015, NEAP

informed Ms. Roybal she was the designated beneficiary of Participant's NEAP

account. ECF No. 52 at 100. On February 6, 2015, Ms. Roybal submitted an

application for NEAP benefits. ECF No. 52 at 9. On February 18, 2015, NEAP

informed Ms. Roybal that the beneficiary form was invalid because it lacked

Participant's signature. ECF No. 56 at 7.

NEAP's Plan specifies that in the event an unmarried participant dies

without having designated a valid beneficiary, the participant's children are

entitled to equal shares of the NEAP account. ECF No. 47 at 18; ECF No. 73 at

19-20. Participant was not married, and Ms. Roybal and Mr. Hill are Participant's

only surviving children.  ECF No. 1 at 5; ECF No. 43; ECF No. 52 at 92.

## A.    Deference to NEAP's Discretion

ERISA fiduciaries must distribute benefits "in accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D).  "[I]f a plan grants the administrator discretion to interpret it or to determine benefit eligibility, a court will uphold such interpretation or determination if reasonable." *Becker v. Williams*, 777 F.3d 1035, 1040 (9th Cir. 2015) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989)).  However, if a plan administrator declines to award benefits to competing claimants and instead files an interpleader action, the administrator "impliedly decline[s]" to exercise its discretion.  *Becker*, 777 F.3d at 1041.  When the administrator fails to exercise its discretion, the court reviews *de novo* the question of who is entitled to benefits.  *Id.*

Here, NEAP's Plan gives the trustees "full, discretionary, and exclusive power and authority … to determine all questions of coverage and eligibility" for benefits.  ECF No. 47 at 25-26; ECF No. 73 at 27.  However, upon realization that Participant did not sign the designation of beneficiary form, NEAP declined to award benefits to Ms. Roybal as the sole beneficiary.  ECF No. 56 at 7.  NEAP also declined to award equal shares of Participant's account to Ms. Roybal and Mr. Hill, despite the fact that both parties submitted proof that they are Participant's legal heirs.  ECF No. 1 at 5; ECF No. 43.  Instead, NEAP filed the present

interpleader action. ECF No. 1 at 6-7. Filing an interpleader action implies

NEAP's trustees declined to exercise the discretion they are otherwise entitled to

exercise. *Becker*, 777 F.3d at 1041.

This case differs factually from *Becker*, in that the administrators in *Becker*

filed the interpleader motion after receiving competing claims for benefits. *Becker*,

777 F.3d at 1037. Here, NEAP initially notified Ms. Roybal that she was the

designated beneficiary. ECF No. 52 at 100. Shortly thereafter, NEAP notified Mr.

Hill that Participant had a designated beneficiary on file other than Mr. Hill. ECF

No. 52 at 102. Only after this correspondence, and after Ms. Roybal submitted an

application for benefits, did NEAP determine that the beneficiary form was invalid

and filed the interpleader action. ECF No. 48 at 53. Despite the factual

dissimilarities, the rule set forth in *Becker* controls. In determining when a plan

administrator has exercised discretion, the Ninth Circuit seems to draw the line at

the act of awarding benefits. *Becker*, 777 F.3d at 1041. Although NEAP contacted

Ms. Roybal, it never approved her application for benefits or awarded her the

funds. ECF No. 48 at 53. Moreover, NEAP did not jointly award benefits to Ms.

Roybal and Mr. Hill and instead filed an interpleader action. Therefore, NEAP's

Trustees declined to exercise its discretion to determine the appropriate

beneficiaries in this case. Thus, the Court will review *de novo* whether Ms. Roybal

was validly designated as a beneficiary.

## B.      Force of Plan Documents

When reviewing competing claims to ERISA plan benefits, the Court should

consider the plan documents.  *Becker*, 777 F.3d at 1041.  "An ERISA fiduciary

must distribute benefits 'in accordance with the documents and instruments

governing the plan.'" *Becker*, 777 F.3d at 1038.  "[O]nly those documents that

elucidate 'exactly where [the participant] stands with respect to the plan—what

benefits he may be entitled to, what circumstances may preclude him from

obtaining benefits, what procedures he must follow to obtain those benefits…" are

plan documents.  *Id.* at 1039 (citing *Hughes Salaried Retirees Action Comm. v.*

*Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 690 (9th Cir. 1995)).

Here, the NEAP Plan grants significant deference to NEAP's administrators

to interpret the Plan and determine benefits.  ECF No. 47 at 25-26; ECF No. 73 at

27.  NEAP's Plan provides that if a participant dies unmarried and without

designating a valid beneficiary, the participant's benefits shall be distributed

equally among the participant's living children.  *Id.* at 18; ECF No. 73 at 19-20.

However, the Plan itself does not specify what steps a participant must take to

designate a beneficiary.  Notably, the Plan does not state whether the participant's

signature is required on the beneficiary form in order to designate a valid

beneficiary.

Mr. Hill asserted at oral argument that a signature requirement for the

beneficiary form exists if the Plan is read together with the Summary Plan

Description, including the sample beneficiary form contained therein.  The Ninth

Circuit has held that designation of beneficiary forms like this one are not "plan

documents" under ERISA.  *Becker*, 777 F.3d at 1039-40.  Summary plan

documents are also not plan documents.  *CIGNA Corp. v. Amara*, 563 U.S. 421,

438 (2011).  Even if Mr. Hill can identify portions of these documents that can be

read together to imply a signature requirement to validly designate a beneficiary,

the documents Mr. Hill identifies are not entitled to the force of plan documents.

The Trustees were not bound to rely on these documents in determining a

beneficiary, and the Court similarly is not bound.

The Court is left to consider the Plan itself, which does not specify how to

designate a beneficiary.  ECF No. 47 at 5-29; ECF No. 73 at 8-30.  In such a

situation, the Court is to apply the equitable doctrine of substantial compliance to

determine whether Participant validly designated Ms. Roybal as his beneficiary.

*See Becker*, 777 F.3d at 1041.

## C.      Applicable Law of Substantial Compliance

"ERISA is a comprehensive statutory scheme designed to govern employee

benefit plans, which provides that it 'shall supersede any and all State laws insofar

as they … relate to any employee benefit plan' covered by the statute."

*BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 828 (9th Cir. 2000).

1  However, ERISA does not "expressly govern[] disputes between claimants to plan

2  proceeds." *Id.* When a dispute over ERISA benefits turns on a question of

3  substantial compliance, ERISA does not preempt state law. *Id.* at 828-30.

4  Therefore, the Court must apply the law of the forum state. *Id.*; *see also Erie*

5  *Railroad v. Tompkins*, 304 U.S. 64, 78 (1938).

6       Here, the question of whether Participant validly designated Ms. Roybal as

7  his sole beneficiary turns on whether Participant's actions rise to the level of

8  substantial compliance. Therefore, this Court applies the law of the forum state,

9  Washington, in order to determine substantial compliance.

10       **D.    Washington Law of Substantial Compliance**

11       In Washington, courts can act in equity to enforce an attempted change in

12  beneficiary if the insured "has substantially complied with the provisions of the

13  policy regarding that change." *In re Estate of Freeberg*, 122 P.3d 741, 743 (Wash.

14  Ct. App. 2005) (internal citations omitted). Substantial compliance is

15  demonstrated by the participant having "manifested an intent to change

16  beneficiaries and done everything reasonably possible to make that change." *Id.*

17  Therefore, the question in this case becomes whether the Participant manifested an

18  intent to designate Ms. Roybal as the beneficiary of his NEAP account, and

19  whether the Participant did everything reasonably possible to do so.

20       "When confronted with the fact-specific inquiry of determining a deceased's

intent, the failure to complete simple, mundane tasks undermines [the participant's] alleged unequivocal desire to change his beneficiary." *Becker*, 168 F. Supp. 3d at 1328. A review of Washington's case law, however, does not reveal a requirement that a document must be signed in order to requisite intent for substantial compliance. *See Freeberg*, 122 P.3d at 744 (insured's in-person oral request to change IRA beneficiary and investment agency's failure to do so was substantial compliance); *Allen v. Abrahamson*, 529 P.2d 469 (Wash. Ct. App. 1974) (insured's act of giving parents insurance certificates but making no written request to insurance company did not substantially comply with insurance company's policy requiring written notice of change); *Sun Life Assur. Co. of Canada v. Sutter*, 95 P.2d 1014, 1017 (Wash. 1939) (unsigned letter clearly written by decedent substantially complied with plan requirement of written notice to change beneficiary).

The Court finds the question of Participant's intent and the determination of whether he did everything reasonably possible to effectuate his intent present outstanding issues of fact that are inappropriate to resolve on summary judgment. In considering a motion for summary judgment, the Court is to consider the facts and draw all rational inferences therefrom in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. at 378. Here, both Defendants moved for summary judgment.

A genuine issue of material facts exists as to Participant's intent when he completed certain aspects of the beneficiary form identifying Ms. Roybal as his sole beneficiary, but did not sign it, and then submitted it to NEAP as part of the application. Moreover, the rational inferences to be drawn from viewing the evidence in the light most favorable to each defendant support each defendant's separate positions. If all rational inferences are drawn in Ms. Roybal's favor, a reasonable trier of fact could conclude Participant intended to designate Ms. Roybal as his beneficiary by his actions of completing some of the beneficiary form in his own hand, signing other portions of the application, and submitting the application to NEAP. Alternatively, if all rational inferences are drawn in Mr. Hill's favor, a reasonable trier of fact could conclude Participant did not intend to designate Ms. Roybal as his beneficiary because Participant correctly completed other portions of the application calling for Participant's signature.

Moreover, the Court finds that the proffered evidence presents evidentiary and credibility issues that are inappropriate to resolve on summary judgment. For example, the evidence regarding Participant's 2012 will (ECF No. 48 at 55) and Ms. Roybal's deposition testimony regarding this document (ECF No. 48 at 25-26) can support a rational inference in favor of each defendant. Mr. Hill offers this

document as evidence of Participant's testamentary intent to treat all[1] of his

children equally. ECF No. 46 at 27. Ms. Roybal stated that this document was the

product of a "mock meeting" meant to pacify the concerns of Participant's other

children without revealing Participant's true intent to designate Ms. Roybal as his

beneficiary. ECF No. 48 at 25-26. A reasonable trier of fact could conclude from

this evidence that Participant did in fact intend for Ms. Roybal to be his sole

beneficiary, and the 2012 meeting was meant to hide this intent from Participant's

other children. An equally reasonable inference from these events is that

Participant's failure to sign the NEAP beneficiary form reflects Participant's intent

to treat his children as equal beneficiaries and constitutes an attempt to once again

conceal his true intent from a beneficiary, this time Ms. Roybal. The parties'

competing interpretations of these events raise issues of fact and credibility that are

not appropriate to resolve at summary judgment.

     The Court finds similar outstanding issues of material fact exist regarding

the reasonableness of Participant's actions as they relate to substantial compliance.

Based on the current record, viewed in the light most favorable to each opposing

party, neither defendant is entitled to judgment as a matter of law on the issue of

---

[1] Defendant's other alleged child, Christopher Hill, could not prove paternity in this case and was dismissed as a defendant. ECF No. 44.

Participant's substantial compliance with NEAP's procedure to designate a beneficiary. *Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

The Court finds that neither Defendant has not met their burden of demonstrating the absence of any genuine issues of material fact, which precludes summary judgment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Roybal's Motion for Summary Judgment (**ECF No. 49**) is **DENIED**.

2. Defendant Hill's Motion for Summary Judgment (**ECF No. 46**) is **DENIED**.

3. The District Court Clerk is directed to enter this Order and provide copies to counsel.

DATED December 1, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE
