FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 04, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATIONAL ELECTRICAL ANNUITY PLAN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>SHAWNA T. ROYBAL, and individual; and JEREMY L. HILL, an individual,<br>　　　　　Defendants. | No. 1:15-CV-03213-MKD<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

　　　　This matter comes before the Court on a bench trial conducted on May 9, 2018. Plaintiff, as a disinterested stakeholder, has been excused from participation in trial and any further proceedings in this matter. ECF No. 98. Defendant Shawna Roybal was represented by her attorney Tyler Farmer. Defendant Jeremy Hill was represented by his attorney Russell Gilbert. Having considered the testimony of the witnesses at trial, the exhibits admitted into evidence at trial, and the remainder of the file, the Court enters the following decision, findings of fact, and conclusions of law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1

**DECISION SUMMARY**

The Court has been called upon to resolve a dispute between the children of Ronnal R. Hill (Decedent), his daughter Shawna Roybal and his son Jeremy Hill. The question before the Court is whether Decedent effectively designated a beneficiary to Decedent's retirement benefits from the National Electrical Annuity Plan (NEAP), which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. The dispute was initiated in this Court through an interpleader action filed by NEAP.

**A. Legal Framework**

"ERISA is a comprehensive statutory scheme designed to govern employee benefit plans, which provides that it 'shall supersede any and all State laws insofar as they … relate to any employee benefit plan' covered by the statute." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 828 (9th Cir. 2000). However, ERISA does not "expressly govern[] disputes between claimants to plan proceeds." *Id*.

Parties can either strictly or substantially comply with an ERISA plan's requirements to designate a beneficiary. *Becker v. Carmen Stephanie Mays-Williams*, 168 F. Supp. 3d 1325, 1327-28 (W.D. Wash. 2016). "'In circumstances where a plan provides liberal mechanisms for changing beneficiaries…, "strict" enforcement means allowing participants to do exactly

that.'" *Id.* at 1327 (quoting *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997)). Strict compliance can be manifested by a "clear and unequivocal communication." *Id.*

In the absence of strict compliance, the Court considers the doctrine of substantial compliance. *Id.* When a dispute over ERISA benefits turns on a question of substantial compliance, ERISA does not preempt state law. *Id.* at 828-30. Therefore, the Court must apply the law of the forum state. *Id.*; *see also Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938). This case concerns a dispute over plan proceeds, so the matter is governed by Washington law. In Washington, courts can act in equity to enforce an attempted change in beneficiary if the insured "has substantially complied with the provisions of the policy regarding that change." *In re Estate of Freeberg*, 122 P.3d 741, 743 (Wash. Ct. App. 2005) (internal citations omitted). Substantial compliance in Washington is a two part test: (1) whether the individual "manifested an intent" to name the beneficiary, and (2) whether the individual has "done everything reasonably possible" to effectuate that intent. *See id.* It is within this legal framework that the Court considers the evidence presented at trial.

**B. Evidence at Trial**

The central piece of evidence in this case is Decedent's beneficiary designation form (beneficiary form), which purports to name Shawna Roybal as

the beneficiary of Decedent's NEAP account.  On the beneficiary form, Defendant completed the name, Social Security number, birthdate, and relationship fields with Shawna Roybal's information.  Decedent, the plan's participant, did not sign the "participant signature" field.  Instead, Shawna Roybal signed her name in the "participant signature" field.  She also wrote in her address as the beneficiary address.  In November 2009, Decedent submitted this form with the rest of his application to the NEAP administrator.  The parties dispute whether this form, without Decedent's signature, was effective to designate Shawna Roybal as Decedent's beneficiary.

The most compelling evidence of Decedent's intent presented at trial is the NEAP application, which included the beneficiary form.  In addition to personally completing a portion of the form with Shawna Roybal's information, Decedent returned this form along with the rest of his NEAP application, which he signed, to NEAP.  NEAP identified deficiencies in the application unrelated to the beneficiary form, and notified Decedent of these deficiencies.  Decedent remedied these deficiencies, and NEAP accepted the application.  Decedent began receiving payments.  There is no evidence that Decedent attempted to modify or change the initial beneficiary designation.  Decedent did not commit to writing or contact NEAP regarding any purported attempt to designate any other person, including Jeremy Hill, as the beneficiary.  The most reasonable

conclusion based on the documentary evidence is that Decedent intended to name Shawna Roybal as his beneficiary and did everything reasonably possible to do so.

Shawna Roybal testified that Decedent intended for her to be the sole beneficiary of his NEAP account. She testified that during their visit to the bank, Decedent directed her to sign her name on the beneficiary form and fill in her address information, which she did. Shawna Roybal explained that she and Decedent were mistaken as to whose signature needed to be on the form, and that the omission of Decedent's signature from the form was a mistake. Shawna Roybal's testimony is consistent with the documentary evidence in this case. The Court has concerns regarding Shawna Roybal's recent behavior, including evidence that she threatened or attempted to intimidate witness Lance Rowe. However, the Court concludes that this recent conduct does not sufficiently diminish her credibility as it relates to the events that occurred in November 2009 when the NEAP application was completed.

During trial, Jeremy Hill presented evidence to support alternative theories that Decedent either intended that the entire NEAP account be distributed to Jeremy Hill or that Decedent intended for the account to be distributed equally among his children and stepson. Jeremy Hill's theories of the case are not convincing for several reasons.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5

First, neither of Jeremy Hill's theories are consistent with the documentary evidence. The 2009 NEAP application was completed by Decedent and submitted to NEAP by Decedent. The beneficiary form included in the application, which named Shawna Roybal as the beneficiary, was partially completed by Decedent. The June 2012 document, purporting to be Decedent's will, is of limited evidentiary value regarding Decedent's intent in November 2009, given that it was generated nearly three years after the NEAP beneficiary form was completed and submitted. However, when Decedent had the opportunity to commit any intent in writing through the June 2012 document, he made no mention of the NEAP account, despite specific references to several other assets. During the trial, both Jeremy Hill and Lance Rowe testified that Decedent told them he intended to leave the NEAP benefits to Jeremy Hill. There is simply no evidence in the record that Decedent took any step to name Jeremy Hill as a sole or partial beneficiary of the NEAP account. The application and beneficiary form provides the most direct evidence of Decedent's intent in the record, and it does not support a finding, consistent with Jeremy Hill's theories, that Decedent intended to name Jeremy Hill as a beneficiary.

Second, the witness testimony did not adequately explain why Decedent's alleged intent to name Jeremy Hill as the sole beneficiary or equal beneficiary of

the NEAP account was inconsistent with the NEAP application paperwork. Jeremy Hill proposed a theory that Decedent intentionally omitted his signature from the beneficiary form in an attempt to appease Shawna Roybal but invalidate the form. However, Shawna Roybal and Lance Rowe both testified that Decedent was a straightforward and honest person. Jeremy Hill's theory that Decedent attempted to deceive Shawna Roybal is inconsistent with the testimony from Shawna Roybal and Lance Rowe regarding Decedent's character. Moreover, this theory is inconsistent with the evidence that Decedent trusted Shawna Roybal to manage his rental units, including being named on the bank accounts; Shawna Roybal having unfettered access to Decedent's house; the services and assistance Shawna Roybal provided for Decedent; and the amount of time Shawna Roybal and her children spent with Decedent. There is no evidence that supports Jeremy Hill's theory that Decedent would deceive Shawna Roybal in regards to this matter.

Third, Jeremy Hill argued that Decedent never intended for the NEAP benefits to be distributed to Shawna Roybal because the funds would adversely impact her ability to receive disability benefits. This theory is similarly not supported. Jeremy Hill and Lance Rowe both testified that Decedent's intent was to leave the NEAP benefits to Jeremy Hill in the event Jeremy Hill developed Huntington's disease. If Decedent was concerned about Jeremy Hill

developing a disabling condition, it is not clear why Decedent would be concerned only about the impact on Shawna Roybal's ability to maintain disability benefits, and not concerned about Jeremy Hill's ability to do the same. Furthermore, Decedent could not have been concerned about the impact of the NEAP account on Shawna Roybal's disability benefits in November 2009, when he completed the NEAP beneficiary form. Shawna Roybal did not apply for disability benefits until 2010 and her application for benefits was not approved until 2012.

Fourth, Jeremy Hill suggested that Shawna Roybal signed the beneficiary form without Decedent's knowledge. Jeremy Hill offered evidence that Shawna Roybal had a key to Decedent's house and had consistent access to Decedent's house. However, this information alone does not support a finding that Shawna Roybal used her key to enter Decedent's house and sign the beneficiary form without Decedent's knowledge. Furthermore, the parties are in agreement that Decedent independently submitted the NEAP application to NEAP and that the beneficiary form was returned intact with the rest of the application booklet. Even if Shawna Roybal had signed the form without Decedent's knowledge, Decedent both filled out her information in his own handwriting and took steps on his own to submit the completed application to NEAP. Jeremy Hill's theory is not supported by the evidence in the record.

It is clear from the evidence that Decedent had affection for all of his children and worked hard to care for his family. The Court has great sympathy for Decedent's other children. However, the facts present in this record and the reasonable inferences drawn therefrom compel a finding that Decedent substantially complied with the requirements to designate Shawna Roybal as his NEAP beneficiary in November 2009. Accordingly, in addition to the forgoing, the Court makes the following findings of facts and conclusions of law.

## FINDINGS OF FACT

The Court makes the following findings of fact from the evidence and testimony presented at the bench trial:

1. Decedent participated in NEAP through his employment. Tr. Ex. 5.

2. The NEAP Plan of Benefits (NEAP Plan) contains the governing rules, regulations, policies, and procedures for payment of benefits of a deceased NEAP account holder. Tr. Ex. 1, 2.

3. The NEAP Plan does not provide any specific requirements that must be followed for an unmarried participant to name a beneficiary to the participant's NEAP account. Tr. Ex. 1, 2; ECF No. 85 at 8.

4. Decedent was married three times and had three biological children, Shawna Roybal, Ronnie Hill,[1] and Jeremy Hill, and one stepchild, Chris Hill.

---

[1] Ronnie Hill passed away prior to Decedent's death.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9

5. Jeremy Hill lived with Decedent for much of Jeremy Hill's life.

6. Decedent was concerned that Jeremy Hill would develop Huntington's disease because Jeremy Hill's mother had Huntington's disease.

7. Over the years, Decedent expressed concerns to various individuals about ensuring Jeremy Hill was provided for in the event that Jeremy Hill developed Huntington's disease.

8. Decedent purchased three duplexes in approximately 2008, which Decedent used as rental properties. From 2008 until approximately 2015, Shawna Roybal managed these units for Decedent. As part of her duties, Shawna Roybal chose the renters, collected and deposited rental payments, paid the bills associated with the rental properties, and cleaned the properties when tenants moved out. She was named on Decedent's bank accounts associated with the rental properties.

9. As part of his employment, Decedent was regularly out of town Monday through Friday and returned to Yakima on the weekends. Shawna Roybal performed household chores, such as cleaning and grocery shopping, for Decedent when he was out of town during the week. Shawna Roybal and her children regularly visited Decedent on the weekends, including having family dinners.

10. On November 14, 2009, Decedent and Shawna Roybal went to a

Bank of America to complete financial paperwork for the rental properties and for Decedent's personal finances. Decedent opened bank accounts related to the rental properties and opened a personal account for the purpose of receiving his NEAP benefits.

11. In November 2009, Decedent completed a NEAP Benefit Application. Tr. Ex. 5.

12. On the NEAP beneficiary form, which is page 10 of the NEAP Benefit Application, Decedent completed the name, Social Security number, date of birth, and relationship fields with Shawna Roybal's information. Tr. Ex. 5 at 10; Tr. Ex. 8 at 2; Roybal Testimony.

13. Decedent told Shawna Roybal he intended to designate her as the beneficiary of the NEAP account. On the NEAP beneficiary form, at Decedent's direction, Shawna Roybal completed the participant's signature and address fields with her own information and signature. Tr. Ex. 5 at 10; Tr. Ex. 8 at 2; Roybal Testimony.

14. Decedent, the participant, did not sign the beneficiary form on the "participant signature" line. *Id.* Decedent did sign the NEAP application in two other places, specifically in the section authorizing direct deposit of the benefits, Tr. Ex. 5 at 13, and on the last page of the application, Tr. Ex. 5 at 15.

15. Decedent submitted the completed NEAP application, including

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

the beneficiary form containing Shawna Roybal's information, to NEAP. Tr. Ex. 5 at 15; Tr. Ex. 8 at 2.

16. On December 1, 2009, NEAP notified Decedent that NEAP was unable to process his NEAP application because NEAP needed additional forms regarding Decedent's taxes and marital history. Tr. Ex. 12. NEAP did not identify to Decedent any deficiencies on the beneficiary form. *Id.*

17. Decedent completed the outstanding tax and marital history paperwork on December 5, 2009 and submitted this paperwork to NEAP. Tr. Ex. 8.

18. On December 29, 2009, NEAP notified Decedent that his NEAP application had been approved. Tr. Ex. 13.

19. Decedent began receiving the NEAP pension benefit in December 2009. Tr. Ex. 8.

20. Decedent was scheduled for a significant surgery on June 13, 2012.

21. On June 10, 2012, Decedent gathered his children, Shawna Roybal and Jeremy Hill, and his step-son Chris Hill, to discuss his estate plan in the event that he did not survive the surgery.

22. The June 10, 2012 meeting was memorialized in a document (the June 2012 document) that Decedent dictated to Shawna Roybal. Tr. Ex. 101.

23. The June 2012 document was generated approximately two years and seven months after Decedent completed the NEAP application and beneficiary form and submitted it to the NEAP administrator.

24. The June 2012 document states that in the event Decedent did not survive the June 13, 2012 surgery, Decedent's estate was to be kept intact; that all three children (Shawna Roybal, Jeremy Hill and stepson Chris Hill) were to share decision making power; that Shawna Roybal was to continue managing the rental units; that Shawna Roybal was to continue living in the 2nd Avenue house, but that if she used it as a rental property the profits were to be shared equally amongst the children; that Jeremy Hill was to receive the 1st Avenue property; and that children were to divide certain household items and personal property in accordance with the document's instructions. Tr. Ex. 101.

25. The June 2012 document does not mention the NEAP account or discuss Decedent's intent regarding the NEAP account.

26. Decedent survived the June 13, 2012 surgery.

27. After submitting the initial beneficiary form, Decedent made no attempt to change his beneficiary.

28. Decedent never executed any written document or made any effort to designate Jeremy Hill as the sole beneficiary of the NEAP account.

29. Decedent died on December 7, 2014.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13

30. Decedent was not married at the time of his death.

31. At the time of his death, Decedent was survived by two biological children, Shawna Roybal and Jeremy Hill.

32. At the time of his death, Decedent's NEAP account balance was approximately $400,000.

33. On January 22, 2015, NEAP informed Shawna Roybal she was the designated beneficiary of Decedent's NEAP account. Tr. Ex. 15.

34. On January 29, 2015, NEAP informed Jeremy Hill that Decedent had a designated beneficiary on file. Tr. Ex. 16.

35. On February 6, 2015, Shawna Roybal submitted a beneficiary application for NEAP benefits. Tr. Ex. 6.

36. On February 9, 2015, Jeremy Hill sent NEAP a letter alleging Shawna Roybal had forged Decedent's signature on NEAP paperwork. Tr. Ex. 7.

37. On February 10, 2015, NEAP sent Jeremy Hill an Affidavit of Next of Kin to determine to whom the NEAP account balance should be paid. Tr. Ex. 6.

38. On February 18, 2015, NEAP informed Shawna Roybal that the beneficiary form was invalid because it lacked Decedent's signature. Tr. Ex. 6.

39. On December 18, 2015, NEAP filed this interpleader action.

**CONCLUSIONS OF LAW**

1. This Court has jurisdiction under 29 U.S.C. §§ 1132(a)(3)(B)(ii), 1132(e) and 28 U.S.C. § 1331.

2. This is an interpleader action. Interpleader actions "developed in equity and [are] governed by equitable principles." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033-34 (9th Cir. 2000).

3. NEAP is an employee pension benefit plan, governed by the Employee Retirement Income Security Act of 1974 (ERISA). Tr. Ex. 1; 29 U.S.C. § 1002(2).

4. NEAP declined to exercise its discretion under the NEAP Plan by filing an interpleader action. Accordingly, the Court reviews the questions presented in this case de novo. *Becker v. Williams*, 777 F.3d 1035, 1041 (9th Cir. 2015); *see* ECF No. 85.

5. Decedent was a "participant" of NEAP. 29 U.S.C. § 1002(7).

6. The NEAP Plan provides that in the event an unmarried participant dies while receiving a pension benefit, the full value of the participant's account shall be paid to his designated beneficiary, and if no beneficiary is designated, then to the participant's children. Tr. Ex. 1 at 12-13.

7. Neither the NEAP Plan nor NEAP's summary plan description specify what steps a participant must take in order to designate a beneficiary. Tr.

Ex. 1, 3; ECF No. 85 at 8.

8. In the absence of strict compliance, the Court must assess whether Decedent substantially complied with the terms of the NEAP plan. *Becker*, 777 F.3d at 1041.

9. Under the doctrine of strict compliance, where the plan does not specify a mechanism for designating a beneficiary, a "clear and unequivocal communication" may suffice to designate a beneficiary. *Becker*, 168 F. Supp. 3d at 1327. "When confronted with the fact-specific inquiry of determining a deceased's intent, the failure to complete simple, mundane tasks undermines [the participant's] alleged unequivocal desire to change his beneficiary." *Id.* at 1328.

10. When a dispute over ERISA benefits turns on a question of substantial compliance, ERISA does not preempt state law. *McMath*, 206 F.3d at 828-30. Substantial compliance is determined by the law of the forum state. *Id.*

11. In Washington, courts can act in equity to enforce an attempted beneficiary designation if the insured "has substantially complied with the provisions of the policy" regarding the designation. *See Freeberg*, 122 P.3d at 743 (internal citations omitted). Substantial compliance in Washington is a two part test: (1) whether the individual "manifested an intent" to name the beneficiary, and (2) whether the individual has "done everything reasonably

possible" to effectuate that intent.

12. Decedent manifested an intent to designate Shawna Roybal as his beneficiary by personally completing several fields on the beneficiary form with her information, having Shawna Roybal sign as the Participant and list her address in the beneficiary address field, submitting it to the NEAP administrator, and advising her he intended for her to be the beneficiary. Tr. Ex. 5 at 10. This intent is consistent with the witness testimony that Decedent trusted Shawna Roybal to manage his rental properties, and that Shawna Roybal provided care and performed household activities for Decedent.

13. Decedent did everything reasonably possible to designate Shawna Roybal as his beneficiary. Decedent submitted the completed NEAP application, despite the beneficiary form containing an error (Shawna Roybal's signature as "Participant" and the lack of Decedent's signature). When NEAP notified Decedent of the deficiencies in his application for benefits, NEAP did not identify the deficiency in the beneficiary form. Indeed, NEAP initially notified Shawna Roybal that she was Decedent's designated beneficiary after his death. NEAP did not discover the incorrect signature on the beneficiary form until after Decedent's death. Absent notification from NEAP, Decedent could not have realized his mistake, so there were no further steps Decedent reasonably could have been expected to take to remedy the deficiency.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 17

14. Although Decedent did not sign the beneficiary form, Washington law does not require a participant's signature on a beneficiary form in order to designate a beneficiary. *See Freeberg*, 122 P.3d at 744 (insured's in-person oral request to change IRA beneficiary and investment agency's failure to do so was substantial compliance); *Allen v. Abrahamson*, 529 P.2d 469 (Wash. Ct. App. 1974) (insured's act of giving parents insurance certificates but making no written request to insurance company did not substantially comply with insurance company's policy requiring written notice of change); *Sun Life Assur. Co. of Canada v. Sutter*, 95 P.2d 1014, 1017 (Wash. 1939) (unsigned letter clearly written by decedent substantially complied with plan requirement of written notice to change beneficiary).

15. The doctrine of substantial compliance is "intended to circumvent harsh results 'engendered by a formalistic, overly technical adherence to the exact words of the change of beneficiary provision in a given policy.'" *McMath*, 206 F.3d at 828 (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994)). Denying Shawna Roybal's claim solely because Decedent did not correctly sign the form would be the kind of harsh result that equity seeks to avoid.

16. Shawna Roybal is entitled to an order from this Court naming her as the sole beneficiary of Decedent's NEAP account and ordering NEAP to

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 18

distribute to Shawna Roybal the proceeds of Decedent's NEAP account.

## CONCLUSION

Based upon the foregoing findings of fact and conclusions of law,

IT IS HEREBY ORDERED:

1. The Clerk of Court is directed to enter Final Judgment on a separate document as follows: Judgment for Defendant Shawna Roybal for the recovery of the remainder of Decedent's NEAP benefits. NEAP shall distribute the remaining balance of Decedent's NEAP benefits to Shawna Roybal without unreasonable delay.

DATED June 4, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE